# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 18, 2011

## STATE OF TENNESSEE v. TIFFANY DAVIS

**Appeal from the Circuit Court of Marshall County**
**No. 09CR-108     Robert G. Crigler, Judge**

_____

**No. M2010-01779-CCA-R3-CD - Filed April 18, 2012**

_____

The Defendant, Tiffany Davis, was indicted on eighteen felony drug counts following a series of controlled drug purchases conducted by law enforcement officers. The jury convicted the Defendant of one count of the sale of less than 0.5 grams of cocaine, a Class C felony; three counts of the sale of 0.5 grams or more of cocaine, all Class B felonies; three counts of the delivery of less than 0.5 grams of cocaine, all Class C felonies; three counts of the delivery of 0.5 grams or more of cocaine, all Class B felonies; two counts of conspiracy to sell 0.5 grams or more of cocaine, both Class C felonies; and one count of the lesser included offense of facilitation of the sale of 0.5 grams or more of cocaine, a Class C felony. She was found not guilty on the remaining five counts.   At her sentencing hearing, the trial court found the Defendant to be a career offender based upon her seven prior Class B felony convictions, for which she previously had received a sixteen-year sentence.  After merging alternative counts in this action, the trial court sentenced her to the mandatory sentence of fifteen years for each Class C felony and thirty years for each Class B felony.  The trial court then ordered each of these sentences to run concurrently.  After finding that the Defendant had an extensive prior record of criminal activity and that the present offenses were committed while she was on probation, the trial court ordered its effective thirty-year sentence in this case to run consecutively to the Defendant's prior sixteen-year sentence.  On appeal, the Defendant challenges the sufficiency of the evidence supporting each conviction. She also challenges her effective sentence, arguing that it is excessive.  After a careful review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Emeterio R. Hernando, Lewisburg, Tennessee, for the appellant, Tiffany Davis.

Robert E. Cooper, Jr., Attorney General & Reporter; Clark B. Thornton, Assistant Attorney General; Charles Crawford, District Attorney General; Weakley E. Barnard, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

I. BACKGROUND FACTS AND PROCEDURE

a. Summary

The Defendant's convictions arose out of a series of eight separate controlled drug purchases conducted through the use of confidential informants by the 17th Judicial District Drug Task Force ("DTF"). The Defendant was indicted by the Marshall County Grand Jury of eight counts of the sale of cocaine, a Schedule II controlled substance, eight counts of the delivery of cocaine, and two counts of conspiracy to sell cocaine. A co-defendant, Serena Ward, was indicted in ten of the counts and tried separately. A jury trial was held in the Marshall County Circuit Court on April 12-14, 2010. The jury found the Defendant guilty of one count of the sale of less than 0.5 grams of cocaine, a Class C felony; three counts of the sale of 0.5 grams or more of cocaine, all Class B felonies; three counts of the delivery of less than 0.5 grams of cocaine, all Class C felonies; three counts of the delivery of 0.5 grams or more of cocaine, all Class B felonies; two counts of conspiracy to sell 0.5 grams or more of cocaine, both Class C felonies; and one count of the lesser included offense of facilitation of the sale of 0.5 grams or more of cocaine, a Class C felony. She was found not guilty on the remaining five counts.

The trial court held a sentencing hearing on June 2, 2010. The court merged each alternative count such that only one conviction remained from each criminal episode. The State introduced the Defendant's seven prior Class B felony convictions, for which she had received a sentence of sixteen years on March 8, 2006. Based on these prior convictions, the trial court found her to be a career offender. Thus, the court imposed the mandated sentence of fifteen years for each Class C felony and thirty years for each Class B felony. The trial court ordered these sentences to run concurrently with each other. Additionally, at the time of these criminal offenses, the Defendant was serving probation for her prior sixteen-year sentence. As a result of the Defendant's extensive prior record of criminal activity and violation of probation, the trial court ordered the Defendant's present thirty-year sentence to run consecutively to her prior sixteen-year sentence.

The trial court entered judgments on the Defendant's convictions on June 2, 2010. On July 8, 2010, the Defendant filed a motion for new trial. The trial court held a hearing and denied the motion for new trial by order entered July 29, 2010. On August 19, 2010, the

Defendant filed her notice of appeal. On appeal, the Defendant challenges the sufficiency of the evidence underlying each conviction. She also argues that the trial court erred by ordering her thirty-year sentence to run consecutively to her prior sixteen-year sentence.

b. Evidence at Trial

*I.*

Counts 1 and 2 arose out of a controlled drug purchase at the Defendant's residence at the Martin Street Apartments in Marshall County at approximately 8:00 – 8:30 p.m. on August 6, 2008. The Defendant was indicted for the sale (Count 1) and delivery (Count 2) of less than 0.5 grams of cocaine, both Class C felonies.

Christine Guerrero ("CI Guerrero") testified that she was working for the DTF as a confidential informant for the first time on August 6, 2008. She admitted that she had used drugs on "numerous occasions" and had multiple prior convictions for forgery, fraudulent use of a debit card, and theft. CI Guerrero testified that she was "friends" with the Defendant and was familiar with her prior to the controlled buy. CI Guerrero said that she bought crack cocaine from the Defendant on numerous occasions and, in fact, would buy crack cocaine from the Defendant every day that she could afford to do so.

On August 6, CI Guerrero called the Defendant's cell phone to see if she could buy $60 worth of crack cocaine, and according to CI Guerrero, the Defendant told her to come to the Defendant's apartment. The Defendant requested that CI Guerrero purchase a two-liter bottle of Mountain Dew out of the $60 and deliver it to her. CI Guerrero subsequently contacted DTF agents and informed them that she could purchase crack cocaine from the Defendant.

CI Guerrero then met with DTF Assistant Director Tim Miller and Agent Bart Fagan near a local bowling alley. Assistant Director Miller searched the Defendant to verify that she was not carrying any contraband such as drugs or money. He also outfitted her with an audio recording device and gave her $57.86 and a two-liter bottle of soda. CI Guerrero then drove to the Defendant's home in a DTF-provided vehicle, which had also been searched for contraband. DTF agents followed in a separate unmarked vehicle, maintaining constant surveillance of CI Guerrero. Assistant Director Miller set up a surveillance position from which he could see the Defendant's apartment. He testified that he never lost sight of CI Guerrero and watched through binoculars as she entered the Defendant's apartment. As CI Guerrero entered the apartment, Assistant Director Miller saw the Defendant stick her head out of the door and look around.

CI Guerrero testified that only the Defendant and her two minor daughters were inside the apartment and that she did not see any other adults. She testified that she gave the Defendant $57 and that the Defendant told her to keep the $.86 cents; one of the Defendant's daughters retrieved the bottle of soda from CI Guerrero's vehicle. CI Guerrero said that the Defendant handed her a yellow napkin containing crack cocaine. CI Guerrero left the Defendant's house, got into her vehicle, and returned to the bowling alley. Assistant Director Miller kept constant surveillance during the return trip. At the bowling alley, CI Guerrero handed Assistant Director Miller the napkin containing the suspected narcotics and the unspent $.86 cents. She also returned the audio recorder. The recording of the transaction was admitted into evidence.

Assistant Director Miller searched CI Guerrero again for contraband. He testified that he maintained control of the substance in the yellow napkin until relinquishing it to DTF Director Tim Lane. Lane served as the agency's evidence custodian and, in that role, escorted suspected narcotics to and from the Tennessee Bureau of Investigation ("TBI") laboratory for testing. A TBI lab technician testified that the substance tested positive for cocaine base and weighed 0.3 grams.

The Defendant testified that she recognized CI Guerrero but did not know her. She said that she recognized CI Guerrero from jail and as a friend of the Defendant's neighbor, but denied having a conversation with her. The Defendant denied that CI Guerrero called her cell phone on August 6, 2008, and denied selling CI Guerrero crack cocaine on that date. The Defendant stated that it was not her voice on the audio recording.

The jury convicted the Defendant for the sale (Count 1) and delivery (Count 2) of less than 0.5 grams of cocaine, both Class C felonies.

*II.*

Counts 3, 4, and 5 arose out of a controlled drug purchase occurring in the parking lot of a Kroger grocery store in Marshall County between 7:00 and 8:00 p.m. on October 22, 2008. The Defendant was indicted for the sale (Count 3), delivery (Count 4), and conspiracy to sell (Count 5) 0.5 grams or more of cocaine.

Pamela Goetz ("CI Goetz") testified that she was working with the DTF as a confidential informant on October 22, 2008. CI Goetz testified that she was a frequent crack cocaine user and that she had worked with the DTF for approximately four years. She said that, on the day of the controlled buy, she did not know the Defendant very well, having only seen her a few times, but that she did recognize the Defendant. She said that she met the Defendant through her friendship with co-defendant Ward.

CI Goetz stated that on October 22 she called the Defendant's cell phone to arrange to purchase crack cocaine later that day. She met with DTF agents at the local industrial park where she called the Defendant's cell phone again. CI Goetz arranged with the person on the other end of this phone call to meet at Kroger to purchase $80 worth of crack cocaine. This phone call was recorded and played for the jury; however, due to a technical error, only CI Goetz's end of the conversation was audible on the recording.

CI Goetz's testimony regarding Counts 3, 4, and 5 spanned two days at trial, and the testimony was sometimes inconsistent. During a recess on the first day of CI Goetz's testimony, she apparently told the prosecutor that she was nervous due to threats made against her minor daughter while the daughter was at school. The prosecutor requested a jury-out hearing during which he informed the trial court of these circumstances. At the State's unopposed request, the trial court adjourned for the evening. The next day, CI Goetz again took the witness stand. She testified that her daughter had been threatened at school by a fellow student that her mother had "better not testify." CI Goetz relayed that the person making the threat was not a member of the Defendant's family and that she did not believe the Defendant was behind the threat. She then testified a second time regarding the controlled buy on October 22, 2008.

CI Goetz thus essentially testified twice regarding the controlled buy on October 22, 2008. She was cross-examined about the differences in her testimony between the two days and the reasons for these differences. She stated that her testimony differed because on the first day she was "confused," "nervous," and "worried about [her] child." She said that once she knew her daughter was safe she was able to testify truthfully.

On the first day of her testimony, CI Goetz said that she was generally not able to recognize the Defendant's voice and confused the Defendant's voice with Ward's. She also initially testified that it was Ward with whom she spoke on the phone call made from the industrial park in which she arranged to meet at Kroger to purchase $80 worth of crack cocaine. However, on the second day of her testimony, she recanted her prior testimony and affirmatively stated that it was the Defendant, not Ward, with whom she spoke on the phone call from the industrial park.

Following the phone call from the industrial park, Agent Chad Webster and CI Goetz drove to Kroger expecting to meet the Defendant. When they arrived, the Defendant was not present. CI Goetz testified that "I called and [the Defendant] said she is on her way. That she is in Kroger's [*sic*]." This phone call was recorded and played for the jury; however, only CI Goetz's side of the conversation was audible. On the second day of her testimony,

CI Goetz clarified that during this phone call, the Defendant told her that Ward would be meeting her to deliver the crack cocaine and that Ward was inside the store.

CI Goetz testified that she and Agent Webster went inside the store looking for Ward. A short time later, Ward called and said that she was pulling into the parking lot. CI Goetz and Agent Webster left the store. Agent Webster returned to his vehicle, and CI Goetz stood beside Agent Webster's vehicle as Ward arrived in a white Oldsmobile Cutlass. CI Goetz knew the Cutlass to be the Defendant's vehicle. Ward parked next to Agent Webster's vehicle, and CI Goetz approached Ward. Ward handed CI Goetz a plastic bag containing crack cocaine, and CI Goetz handed Ward $80. CI Goetz stated that she and Ward did not have to discuss the price or amount for the drugs because "[s]he knew what I wanted." CI Goetz then returned to Agent Webster's vehicle and handed him the suspected drugs. Agent Webster testified that the two vehicles were parked near each other and that he could visually identify Ward. CI Goetz and Agent Webster left the parking lot and returned to the industrial park. There, agents again searched her for contraband. DTF agents Billy Ostermann and Shane George followed Ward as she left Kroger and returned to the Defendant's residence at the Martin Street Apartments.

CI Goetz testified that a few minutes after the transaction, the Defendant called her to confirm whether she had made contact with Ward. Agent Webster testified that he was unable to listen to this phone call but that after the call ended, he checked CI Goetz's phone and verified that the calling number was the Defendant's cell phone number. Later, at the industrial park, CI Goetz received another phone call from the Defendant in which the Defendant told CI Goetz that "[s]he was leaving town and wanted to know if I needed any more [crack cocaine]." Agent George overheard both sides of this phone call, but it was not recorded. Audio and video recordings of the transaction in the Kroger parking lot between Ward and CI Goetz were admitted as exhibits.

Agent Webster's testimony corroborated CI Goetz's second day of testimony. He stated that he never heard the Defendant's voice on the phone calls, only CI Goetz's. He confirmed that he did not see the Defendant in the car with Ward. He testified that he gave the suspected narcotics to Director Lane, who delivered them to the TBI lab. A TBI lab technician testified that the substance tested positive for cocaine base and weighed 0.5 grams.

The Defendant testified that she did not know CI Goetz and that she never agreed to sell her crack cocaine. She denied selling CI Goetz crack cocaine on October 22, 2008, and denied sending Ward to sell her crack cocaine. She denied talking to CI Goetz over the telephone on that date. She testified that she shared her cell phone with her boyfriend, Kenneth Jackson, and Ward. She said that Jackson and Ward often borrowed her car and that Ward must have done so on the date in question.

The jury found the Defendant guilty of the sale (Count 3) and conspiracy to sell (Count 5) 0.5 grams or more of cocaine, Class B and C felonies, respectively. She was acquitted of the delivery charge (Count 4).

*III.*

Counts 6, 7, and 8 arose out of a controlled drug purchase at a Food Lion grocery store in Marshall County at approximately 7:30 p.m. on October 29, 2008. The Defendant was indicted for the sale (Count 6), delivery (Count 7), and conspiracy to sell (Count 8) 0.5 grams or more of cocaine.

CI Goetz testified that on October 29, 2008, she called the Defendant's cell phone to arrange to purchase $80 worth of crack cocaine. With the deal arranged, she met with DTF agents at the industrial park around 6:30 p.m. and again called the Defendant's cell phone. The Defendant answered and told CI Goetz that she was getting something to eat and instructed CI Goetz to call again in an hour. An audio tape of this telephone call was played for the jury; however, again, the recording only contained CI Goetz's side of the conversation. After unsuccessfully attempting to contact the Defendant a few times, CI Goetz finally reached the Defendant on her cell phone and again requested to buy $80 worth of crack cocaine. The Defendant told CI Goetz to meet her at the Food Lion in twenty minutes. This phone call was also recorded from CI Goetz's end of the conversation, and the recording was played for the jury.

At the industrial park, CI Goetz was searched for contraband, issued $80 in DTF funds, and outfitted with an audio recording device. Agent Webster drove CI Goetz from the industrial park to the Food Lion in his DTF vehicle. He testified that he maintained constant visual observation of CI Goetz throughout the entire drug transaction. Once at the Food Lion, CI Goetz called the Defendant, who said that she "was already there" in a silver car. CI Goetz visually identified the Defendant sitting in the front passenger seat of a silver Buick that was parked behind Agent Webster's vehicle. CI Goetz also saw a man sitting in the vehicle but could not identify him. Ward exited the silver Buick and approached Agent Webster's vehicle. CI Goetz exited Agent Webster's vehicle and met Ward beside Agent Webster's vehicle. According to CI Goetz, Ward was "real paranoid" about a nearby vehicle with a man sitting in it who Ward thought was watching them. As Ward approached, she told CI Goetz to give her a hug, and, during the hug, Ward took the $80 from CI Goetz and gave CI Goetz two loose rock-like substances. Ward told her that "if you drop one of them, you are on your own." Agent Webster testified that the transaction occurred directly beside his DTF vehicle, and he positively identified Ward but did not see the Defendant in the silver Buick. CI Goetz returned to Agent Webster's vehicle and gave him the suspected narcotics.

Agent Webster subsequently searched CI Goetz for contraband. She returned the audio recorder, and the transaction recording was played for the jury.

Agent George, who had been conducting surveillance of the transaction, followed the silver Buick as it left the Food Lion parking lot. According to Agent George, the silver Buick returned to the Martin Street Apartments and parked in front of apartment 200, which he knew to be the Defendant's apartment. Agent George testified that from his vantage point, he "could see the silhouette of what I believed to be a black female standing at the driver's side door of the vehicle," and he could also see two other occupants of the vehicle, but he could not positively identify anyone. Agent George ran the tags to the silver Buick and determined that it was registered to a person named Lakeisha Perkins.

Agent Webster delivered the suspected drugs to Director Lane, who delivered them to the TBI laboratory. A TBI lab technician testified that the rock-like substances tested positive for cocaine base and weighed 0.7 grams.

The Defendant testified that she did not speak to CI Goetz by phone on October 29, 2008. She denied agreeing with Ward to sell crack cocaine to CI Goetz on that date. She denied ever agreeing with Ward to sell crack cocaine to anyone. She denied being inside the car at the Food Lion parking lot on that date.

The jury found the Defendant guilty in Count 6 of the lesser included offense of facilitation of the sale of 0.5 grams or more of cocaine, a Class C felony, and also found her guilty in Count 8 of conspiracy to sell 0.5 grams or more of cocaine, a Class C felony. The jury acquitted her of the delivery charge in Count 7.

*IV.*

Counts 9 and 10 arose out of a controlled drug purchase occurring on October 31, 2008, at approximately 3:30 – 4:30 p.m. in the parking lot of a Krystal restaurant in Marshall County. The Defendant was indicted for the sale (Count 9) and delivery (Count 10) of 0.5 grams or more of cocaine.

CI Goetz testified that earlier in the afternoon of October 31, 2008, she talked to the Defendant on the telephone to see if she could purchase crack cocaine later that day. CI Goetz subsequently met with DTF agents at the industrial park where she called the Defendant again to arrange the specific details of the drug transaction. This time, Ward answered the phone. CI Goetz arranged with Ward to purchase $80 worth of crack cocaine. Ward later called back, and the two women arranged to meet at Krystal. Only the audio from CI Goetz's end of these two phone calls was recorded. The recording was played for the

jury. DTF agents searched CI Goetz for contraband and provided her with an audio recording device. Agent Webster drove CI Goetz to Krystal's parking lot. Agents George and Ostermann set up a surveillance position in the parking lot and videotaped the transaction.

The Defendant and Ward arrived in a white Oldsmobile Cutlass registered to the Defendant. They parked directly beside Agent Webster's vehicle. CI Goetz exited Agent Webster's vehicle and walked towards the Defendant's vehicle. According to both CI Goetz and Agent Webster, the Defendant was sitting in the front passenger seat and Ward was sitting in the driver's seat.[1] CI Goetz approached the passenger's side of the vehicle first, but the Defendant motioned for CI Goetz to go to the driver's side of the vehicle. CI Goetz did so and stood beside the driver's side door. According to CI Goetz, the Defendant handed Ward crack cocaine wrapped in white paper, which Ward then handed to CI Goetz. In exchange, CI Goetz handed Ward $80, and Ward handed the money to the Defendant. Agent Webster, sitting in his vehicle directly beside the Defendant's vehicle, corroborated the testimony of CI Goetz. The audio and video recordings of the transaction were admitted as exhibits.

Agent Webster testified that CI Goetz then returned to his vehicle and handed him a piece of paper containing a rock-like substance. Agents searched CI Goetz for contraband. Agent Webster turned over the suspected narcotics to Agent George, who delivered them to Director Lane. A TBI lab technician testified that the rock-like substance contained in the white paper tested positive for cocaine base and weighed 0.5 grams.

The Defendant testified that she did not speak with CI Goetz on October 31, 2008. She denied being present at that Krystal on that date. She denied selling crack cocaine to CI Goetz and said that CI Goetz was lying. She denied that she was depicted in the video recording.

The jury found the Defendant not guilty of the sale (Count 9) but guilty of the delivery (Count 10) of 0.5 grams or more of cocaine, a Class B felony.

---

[1] While watching the surveillance video of the transaction in open court, CI Goetz identified the Defendant as the person sitting in the passenger seat of the Defendant's vehicle; however, on cross-examination, CI Goetz admitted that it was difficult to identify the Defendant in the video. CI Goetz maintained, however, that the Defendant was sitting in the front passenger seat during the transaction regardless of whether she was identifiable in the video.

## V.

Counts 11 and 12 arose out of a controlled drug purchase occurring at a BP gas station in Marshall County at approximately 8:00 p.m. on November 4, 2008. The Defendant was indicted for the sale (Count 11) and delivery (Count 12) of 0.5 grams or more of cocaine, both Class B felonies.

CI Goetz testified that she called the Defendant to confirm that she would be able to buy $140 worth of crack cocaine later that day. CI Goetz then notified DTF agents and met them at the industrial park, where she called the Defendant a second time and arranged the specifics of the transaction. In this conversation, CI Goetz and the Defendant agreed to meet at a local BP gas station. This second phone call was recorded and played for the jury. Both sides of the phone conversation on the recording were audible but distorted.

DTF agents searched CI Goetz for contraband and provided her with an audio recording device. Agent Webster then drove CI Goetz to the BP gas station in his DTF vehicle. A short time later, the Defendant and Ward arrived in the silver Buick registered to Perkins. Ward was driving, and the Defendant was in the front passenger seat. CI Goetz exited the DTF vehicle and entered the rear driver's side door of the Buick. CI Goetz testified that when the Defendant went to hand her a clear plastic bag with drugs in it, Ward "grabbed the bag of dope" out of the Defendant's hand. Ward then told CI Goetz that, "If it wasn't for me, you wouldn't be getting no dope." Ward then "took a piece of [the] dope out" and "handed [CI Goetz] the package." CI Goetz handed the Defendant $140 and returned to the DTF vehicle.

After leaving the silver Buick and returning to Agent Webster's vehicle, CI Goetz gave him the plastic bag containing suspected crack cocaine and the recording devices. They returned to the industrial park, where agents again searched CI Goetz for contraband. Agent Webster delivered the suspected narcotics to Director Lane, who delivered them to the TBI laboratory. A TBI lab technician testified that the substance tested positive for cocaine base and weighed 0.8 grams.

Agent George videotaped the transaction from a surveillance position. Both the audio and video recordings were admitted as exhibits. On cross-examination, Agent Webster admitted that he did not actually see the Defendant during the transaction. CI Goetz also admitted that the Defendant was not visible on the video; however, she maintained that the Defendant was in the car.

The Defendant testified that she was not at the BP gas station during the transaction. She denied handing CI Goetz illegal drugs or receiving money from her. She denied speaking to CI Goetz on that date.

The jury found the Defendant guilty of the sale (Count 11) and delivery (Count 12) of 0.5 grams or more of cocaine, both Class B felonies.

*VI.*

Counts 13 and 14 arose out of a controlled drug purchase occurring at a liquor store in Marshall County at approximately 5:00 p.m. on December 2, 2008. The Defendant was indicted for the sale (Count 13) and delivery (Count 14) of 0.5 grams or more of cocaine, both Class B felonies.

CI Goetz testified that she called the Defendant's cell phone earlier in the day to arrange to purchase crack cocaine. CI Goetz subsequently met with DTF agents at the industrial park. From there, she called the Defendant's cell phone again and arranged to meet the Defendant at the East Side Liquor Store to purchase $180 worth of crack cocaine. An audio recording of this phone call was made and played for the jury. Both sides of the phone conversation were audible, and CI Goetz identified the Defendant's voice on the recording. DTF agents searched CI Goetz for contraband and provided her with an audio recording device.

Agent Webster drove CI Goetz to the liquor store, and as they pulled in, the Defendant arrived in a white Oldsmobile Cutlass. The two cars were parked a few parking spaces away from each other, with the driver's side of Agent Webster's vehicle facing the passenger's side of the Defendant's vehicle. CI Goetz exited Agent Webster's vehicle and entered the back seat of the Defendant's vehicle. CI Goetz testified that a black male, whom she identified as Kenneth Jackson, was in the driver's seat of the Defendant's vehicle and that the Defendant was in the front passenger seat. Ward was not present. According to CI Goetz, the Defendant asked her to go into the store and buy beer, which she did. After CI Goetz returned with beer and re-entered the Defendant's car, the Defendant told CI Goetz that there was a Newport cigarette box in the back seat. CI Goetz testified that when she picked up the box she discovered that it contained "a bag of dope." CI Goetz testified that she handed the Defendant $180 and left.

CI Goetz returned to Agent Webster's vehicle and handed him the cigarette box and audio recorders. Agent Webster subsequently searched her for contraband. Agent Webster turned over the suspected cocaine to Director Lane, who delivered it to the TBI laboratory.

A TBI lab technician testified that the substance tested positive for cocaine base and weighed 1.4 grams.

Agent Webster testified that he visually identified both the Defendant and Jackson as the occupants of the Oldsmobile Cutlass. He testified that he maintained constant visual contact on CI Goetz except when she went into the store to purchase beer for the Defendant. Agent George conducted video surveillance of this transaction, and the video was played for the jury. Additionally, the audio recording of the transaction was played for the jury.

The Defendant denied talking to CI Goetz and denied being present at the liquor store at the time the transaction occurred.

The jury found the Defendant guilty of the sale (Count 13) and delivery (Count 14) of 0.5 grams or more of cocaine, both Class B felonies.

*VII.*

Counts 15 and 16 arose out of a controlled drug purchase occurring at approximately 11:30 a.m. on February 11, 2009, at the Defendant's residence. The Defendant was indicted for the sale (Count 15) and delivery (Count 16) of less than 0.5 grams of cocaine.

Fredia Johnson ("CI Johnson") testified that, on February 11, 2009, she was working with the DTF as a confidential informant and was being paid for her services. CI Johnson had known the Defendant for "two or three" months, encompassing approximately five meetings. She said that she came to know the Defendant through Ward. CI Johnson admitted that she had a criminal record, including four prior convictions for forgery and a felony drug case pending in Bedford County.

CI Johnson testified that as of February 11, 2009, the Defendant had moved from the Martin Street Apartments and was living at 614 7th Avenue North, in Marshall County. CI Johnson testified that when she first called the Defendant's cell phone Kenneth Jackson answered the phone. CI Johnson spoke with Jackson about purchasing $100 worth of crack cocaine from the Defendant. CI Johnson then met with DTF agents at the industrial park, where she called the Defendant's cell phone in their presence. This latter call was recorded and the recording was admitted into evidence. During the call, the Defendant agreed to sell $100 worth of crack cocaine to CI Johnson.

Agent George testified that he recorded the serial numbers from each of five twenty-dollar bills given to CI Johnson as "buy money." CI Johnson then drove her personal vehicle, which had been searched for contraband, to the Defendant's home, while DTF

agents maintained constant surveillance on her. She parked in the Defendant's driveway, got out of her vehicle, and knocked on the side door. The Defendant asked who was there, and CI Johnson replied "[i]t's Fredia." The Defendant opened the door, and CI Johnson went inside. CI Johnson testified that once inside the home, the Defendant handed her a "folded up piece of paper with crack cocaine in it and I hand[ed] her the $100." CI Johnson testified that no one else was present in the room when the drug transaction occurred, although she could hear Jackson's voice from the kitchen. CI Johnson had been outfitted with an audio recorder, and the recording of the transaction was played for the jury.

CI Johnson left the Defendant's residence and returned to the industrial park. DTF agents followed her there while maintaining constant surveillance. CI Johnson gave the folded up piece of paper with suspected cocaine in it to Agent George. Agent George later gave it to Director Lane, who delivered it to the TBI laboratory for testing. A TBI lab technician testified that the substance tested positive for cocaine base and weighed 0.3 grams.

Assistant Director Miller testified that he conducted video surveillance of the transaction from a nearby yard. The video was played for the jury. The video did not show the drug transaction, which took place inside the Defendant's home, but showed CI Johnson arriving and leaving from the residence. Assistant Director Miller testified that after CI Johnson and the other DTF agents left to return to the staging location, he remained at the scene. He said that soon after CI Johnson left the Defendant's residence, he saw Perkins arrive in a silver Buick and saw persons whom he believed to be the Defendant and Jackson get into the vehicle and leave. Assistant Director Miller then stopped the car based upon a felony warrant he had acquired for the Defendant. DTF agents recovered from the Defendant the five marked $20 bills that had been given to CI Johnson. They also recovered from the Defendant a cell phone with a phone number matching the one used in each prior controlled buy.

The Defendant denied knowing CI Johnson or ever speaking to her. The Defendant said that while CI Johnson may have called the cell phone that the Defendant shared with Jackson and Ward, the Defendant never spoke to her. The Defendant claimed that she was in Columbia, Tennessee at the time she allegedly sold drugs to CI Johnson. She said that when she was pulled over, Jackson had the cell phone and money on his person. According to the Defendant, Jackson thought he had an outstanding warrant and handed her the money and phone in the event he was arrested.

The jury found the Defendant not guilty of the sale (Count 15) but guilty of delivery (Count 16) of less than 0.5 grams of cocaine, a Class C felony.

*VIII.*

Counts 17 and 18 arose out of a controlled drug purchase occurring at the Defendant's home at approximately 9:15 p.m. on February 19, 2009. The Defendant was indicted for the sale (Count 17) and delivery (Count 18) of less than 0.5 grams of cocaine.

On February 19, 2009, the Defendant, having bonded out of jail, was residing at 614 7th Avenue North in Marshall County. CI Johnson testified that she called the Defendant's cell phone to confirm that she could purchase $100 worth of crack cocaine later that day. CI Johnson reached the Defendant by calling a different cell phone number than the one that DTF agents confiscated on February 11, 2009.

CI Johnson and the Defendant apparently had some difficulty arranging a meeting location. After a series of proposed locations and aborted attempts, the two finally arranged via cell phone to meet at the Defendant's home. DTF agents searched CI Johnson for contraband and outfitted her with an audio recording device prior to her meeting the Defendant. Agents Webster and Ostermann followed CI Johnson to the Defendant's home and set up a surveillance position. They saw CI Johnson enter the Defendant's home. CI Johnson testified that after she entered the home, the Defendant handed her crack cocaine wrapped in a folded piece of paper, and she handed the Defendant $100. An audio recording of the transaction was played for the jury, as well as audio recordings of the series of phone conversations in which CI Johnson and the Defendant attempted to arrange a meeting location.

CI Johnson left the Defendant's home under constant police surveillance and returned to the industrial park. She gave Agent Webster the folded piece of paper containing suspected narcotics. Agent Webster testified that he delivered the suspected drugs to Director Lane, who delivered them to the TBI laboratory. A TBI lab technician testified that the substance tested positive for cocaine base and weighed 0.4 grams.

The Defendant denied ever speaking to CI Johnson. She could not recall whether she was home at the time the transaction allegedly occurred, but denied selling CI Johnson crack cocaine. She said that the telephone number CI Johnson claimed to have dialed belonged to Perkins.

The jury found the Defendant not guilty of the sale (Count 17) but guilty of delivery (Count 18) of less than 0.5 grams of cocaine, a Class C felony.

c. Sentencing Hearing

Following the jury's verdict, the trial court held a sentencing hearing on June 2, 2010. The Defendant testified that she was thirty-three years old, the mother of two minor children, and that she had a close relationship with her family. Regarding the present offenses, she said that she had gotten in with "the wrong crowd." She stated that she only reached the tenth grade in high school because of "poor decisions" and that she had worked "on and off" since then. She said that she planned to get her GED while incarcerated, "so once I get out, I can be a better mother, sister, daughter and a better friend and a better citizen."

The State introduced the Defendant's prior felony convictions. Specifically, the Defendant pleaded guilty on March 8, 2006, to seven Class B felony drug convictions for which she received an effective sixteen-year sentence. The convictions stemmed from a different series of controlled drug purchases from the Defendant. She had been released on probation after eighteen months and was arrested for the present offenses while serving probation. Based on these prior convictions, the trial court found her to be a career offender. Consequently, after merging the alternative counts, the trial court imposed the mandated sentence of fifteen years on each Class C conviction and thirty years on each Class B conviction.

The trial court then analyzed whether to run these sentences consecutively or concurrently to each other. The court found by a preponderance of the evidence that the Defendant had an extensive prior record of criminal activity and that she had committed the present offenses while on probation. Based on these findings, the trial court ordered each of the present sentences to run concurrently but ordered the present thirty-year sentence to run consecutively to the prior sixteen-year sentence. Before rendering its sentence, the trial court stated as follows:

Well, there's somewhat conflicting factors in this. The seven prior felonies were all imposed at one time, and that was, I think March 8, [20]06. So it is not like they were spread out over a period of time. But the offenses were committed, and they were spread out over a period of time.

. . . [T]he Court cannot ignore the fact that I gave the [D]efendant a break. She agreed to a sixteen-year sentence. The Court did not impose that on those seven prior felonies. She agreed to sixteen years to serve. And she didn't have much of a record. In fact, her only record prior to that was a simple assault and a resisting arrest, I believe.

After eighteen months, I thought that was sufficient to deter any reasonable person from a life of crime. However, it obviously did not make any impression on [the Defendant].

One thing that the State has not come in and argued, that multiple of these should be consecutive, conceivably more than the new charges could be stacked in different segments to make it conceivably an extremely long period. A hundred-year sentence is probably a theoretical possibility.

After a lot of hard thinking, I think what I will do is, all of these counts will be concurrent with one another, but they will be consecutive to the sixteen years.

I do find that under these circumstances, given the number of felony convictions, the period of time over which both of those seven prior felonies and these felonies in these eighteen counts were committed, that that is a sentence justly deserved in relation to the seriousness of the crime and no greater than that deserved under the circumstances.

The trial court entered judgments on the Defendant's convictions on June 2, 2010; however, it was not until July 8, 2010, that the Defendant filed a motion for new trial. The trial court held a hearing and denied the motion for new trial by order entered July 29, 2010. On August 19, 2010, the Defendant filed her notice of appeal.

II. ANALYSIS

a. Untimely Motion for New Trial and Notice of Appeal

We first must address the State's argument that the Defendant's motion for new trial and notice of appeal were untimely filed. A motion for new trial must be made in writing "within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This thirty-day time limit is mandatory and may not be extended by the trial court. Tenn. R. Crim. P. 45(b)(3). Thus, a trial court lacks jurisdiction to hear and determine a motion for new trial that was not timely filed. State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). In this case, by filing her motion for new trial on July 8, 2010, the Defendant clearly exceeded the thirty-day time limit for doing so as provided for by Tenn. R. Crim. P. 33(b). Where, as here, the trial court nevertheless hears and decides the merits of an untimely motion for new trial, the trial court's order on the motion does not validate the motion. State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (citing Dodson, 780 S.W.2d at 780 (noting that trial court has "no alternative but to dismiss the motion" for new trial. Id.)).

Because the Defendant's untimely motion for new trial was a nullity, it did not toll the thirty-day period for filing a notice of appeal in this Court. State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987); Tenn. R. App. P. 4(a), (c). Thus, in the absence of a timely filed motion for new trial, the Defendant's notice of appeal should have been filed on or before July 2, 2010. The notice of appeal was filed August 19, 2010; therefore, the notice of appeal was also untimely. Tenn. R. App. P. 4(a), (c). However, because a timely filed notice of appeal is not a jurisdictional prerequisite for this Court, we may consider certain limited issues in the interest of justice. Tenn. R. App. P. 4(a). We have reviewed the record, including the affidavit prepared by defense counsel, and have decided that it is in the interest of justice to waive the notice of appeal time requirement in this case.

Although we have waived the notice of appeal time requirement, our review is still constrained by the Defendant's failure to file a timely motion for new trial. Dodson, 780 S.W.2d at 780; Davis, 748 S.W.2d at 207. Specifically, we may not consider any issues that were or should have been raised in a motion for new trial. Martin, 940 S.W.2d at 569. Thus, when "necessary to do substantial justice," we will review for plain error. Tenn. R. App. P. 36(b); Grindstaff v. State, 297 S.W.3d 208, 219 n.12 (Tenn. 2009). We also will review the Defendant's sufficiency of the evidence and sentencing issues, which need not be raised in a motion for new trial in order to preserve appellate review. State v. Vaughn, 279 S.W.3d 584, 593 (Tenn. Crim. App. 2008); State v. Boxley, 76 S.W.3d 381, 389-90 (Tenn. Crim. App. 2001).

### b. Sufficiency of the Evidence

*Standard of Review*

When a defendant challenges the sufficiency of the evidence supporting his or her convictions, our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating that the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. at 75 (citation omitted). This standard of review applies to

-17-

guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Thus, the credibility of an eyewitness identifying the accused as the perpetrator of the crime for which she stands trial is a matter entrusted to the trier of fact and not this Court. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). It is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

With these standards in mind, we will now review the sufficiency of the evidence supporting each conviction.

*I.*

The jury found the Defendant guilty in Counts 1 and 2, respectively, of the sale and delivery of less than 0.5 grams of cocaine. The trial court merged the convictions. Our criminal statutes provide that it is an offense to knowingly sell or deliver a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2)-(3) (Supp. 2008). Cocaine is a controlled substance, and the delivery of less than 0.5 grams of cocaine is a Class C felony. Tenn. Code Ann. §§ 39–17–408(b)(4) (Supp. 2008), – 417(c)(2)(A) (Supp. 2008). "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39–11–302(b) (2006). Although not statutorily defined, a "sale" requires "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." State v. Holston, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). The terms "deliver" and "delivery" are statutorily defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6) (2006).

The evidence shows that on August 6, 2008, CI Guerrero called the Defendant's cell phone and spoke to the Defendant about purchasing $60 worth of crack cocaine later that day. According to CI Guerrero, the Defendant affirmatively stated that she could sell CI

Guerrero crack cocaine and requested that CI Guerrero bring her a two-liter bottle of soda when she came to purchase the drugs. Subsequently, under visual surveillance by DTF agents, CI Guerrero entered the Defendant's home. CI Guerrero testified that while she was in the Defendant's home, the Defendant handed her a yellow napkin containing a rock-like substance. CI Guerrero then gave the Defendant $57, and the Defendant's daughter retrieved the soda from CI Guerrero's vehicle. The substance in the napkin tested positive for cocaine and weighed 0.3 grams. The Defendant denied that CI Guerrero called her cell phone and denied selling her illegal drugs. The jury's guilty verdict implicitly rejects the Defendant's claims, and, as noted above, we will not disturb the jury's witness credibility findings. Strickland, 885 S.W.2d at 87. Viewed in the light most favorable to the State, we conclude that the evidence presented was sufficient to sustain the jury's verdict.

*II.*

The jury found the Defendant guilty in Counts 3 and 5, respectively, of the sale and conspiracy to sell 0.5 grams or more of cocaine. Tenn. Code Ann. §§ 39-17-417(a)(3) and (c)(1); 39-12-103 (2006). At the State's urging, the trial court merged the conspiracy conviction into the sale conviction. We note that a conspiracy conviction is independent from the offense it was created to commit and that double jeopardy principles do not demand that it be merged into the target offense. See State v. Thornton, 10 S.W.3d 229, 238-241 (Tenn. Crim. App. 1999). On appeal, the State does not ask that we reverse the mergers that it requested at trial, and we decline to do so *sua sponte*. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error . . . ."). Accordingly, we will review only the evidence supporting the Defendant's conviction for the sale of 0.5 grams or more of cocaine, a Class B felony. See Tenn. Code Ann. § 39-17-417(c)(1) (Supp. 2008).

Viewed in the light most favorable to the State, the evidence shows that the Defendant arranged over the telephone to sell to CI Goetz a certain amount of cocaine for a certain price at a certain time and place. CI Goetz and Agent Webster went to the prearranged location expecting to meet the Defendant. When the Defendant was not there, CI Goetz called the Defendant, and the Defendant told her that Ward would be meeting her instead to complete the transaction. Ward soon arrived at the appointed time and place in a vehicle registered to the Defendant. When CI Goetz approached Ward, Ward handed her 0.5 grams of cocaine and CI Goetz handed Ward $80. CI Goetz testified that there was no need for her to discuss the price or amount of the cocaine because "she [i.e., Ward] knew what I wanted." A couple of minutes after the drug transaction, the Defendant called CI Goetz's cell phone to verify that CI Goetz had "made contact with Serena Ward." DTF agents followed Ward as she returned to the Defendant's residence immediately following the transaction. Later, the

Defendant again called CI Goetz and told her that she was leaving town and asked CI Goetz if she needed any more crack cocaine.

The Defendant asserts that no reasonable juror could have concluded that she knowingly sold the cocaine because the Defendant was not present at the time and place the transaction actually occurred. Under the facts presented, we disagree. A sale first requires a bargained-for offer and acceptance. Holston, 94 S.W.3d at 510. Here, a reasonable juror could have concluded that the offer and acceptance occurred over the telephone when CI Goetz and the Defendant arranged the price and amount for the illegal drugs. Second, a sale requires actual or constructive delivery of the illegal drugs. Id. Based on the evidence presented, a reasonable juror could have concluded that the Defendant was acting constructively through Ward to effect the drug transaction. The Defendant told CI Goetz that Ward would meet her at Kroger to deliver the drugs. When Ward arrived, she knew the exact amount and price of the drugs and transferred them to CI Goetz. Afterwards, the Defendant verified with CI Goetz that Ward had successfully delivered the drugs and, in fact, asked whether CI Goetz needed more drugs. We conclude that this evidence was sufficient to convict the Defendant of the sale of 0.5 grams or more of cocaine.

### III.

The jury found the Defendant guilty in Count 6 of the lesser included offense of facilitation of the sale of 0.5 grams or more of cocaine. She was also found guilty in Count 8 of the conspiracy to sell 0.5 grams or more of cocaine. As in Counts 3 and 5, the trial court merged the conspiracy conviction into the facilitation conviction at the State's request. On appeal, the State does not ask that we reverse the mergers that it requested at trial, and we decline to do so *sua sponte*. See Tenn. R. App. P. 36(a). Therefore, we will review only the sufficiency of the evidence supporting the facilitation conviction.

Our criminal code provides that "[a] person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2006). The trial court charged facilitation as a lesser included offense of the sale of 0.5 grams or more of cocaine; thus, the conviction was a Class C felony. See Tenn. Code Ann. § 39-11-403(b), Sentencing Comm'n Cmts. (explaining that "[a] defendant charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party").

Viewed in the light most favorable to the State, the evidence establishes that the Defendant arranged over the telephone to meet CI Goetz at Food Lion to sell her $80 worth

-20-

of crack cocaine. Once at the Food Lion, CI Goetz called the Defendant, and the Defendant told her that she was already there. CI Goetz visually identified the Defendant sitting in the front passenger seat of a silver Buick that was parked behind Agent Webster's vehicle. She also saw another man sitting in the vehicle but could not identify him. Ward exited the Buick, approached CI Goetz, and gave CI Goetz two loose rock substances in exchange for $80. This transaction occurred directly beside Agent Webster, although he did not see the Defendant in the car. The two loose rocks substances tested positive for cocaine and weighed 0.7 grams. Agent George followed the silver car from the parking lot and watched it return to the Defendant's residence, where he saw three people exit the vehicle.

The Defendant contends that she was not present for this transaction. She argues that the only evidence linking her to the offense were the phone calls, and that CI Goetz admitted she was unfamiliar with the Defendant's voice. The Defendant thus concludes that the evidence was insufficient to support her conviction.

We disagree. Although it is true that in discussing a previous transaction, CI Goetz stated that she had difficulty distinguishing the Defendant's voice from Ward's, she also recanted that testimony and affirmatively stated that she was familiar with the Defendant's voice. Moreover, in discussing the facts of this particular transaction, CI Goetz never wavered in maintaining that she spoke with the Defendant on the telephone in arranging this drug transaction. The drug purchase then proceeded according to their arrangements. The Defendant arrived with Ward (and an unidentified man) at the time and place discussed in the recorded phone call. CI Goetz identified the Defendant as the person sitting in the front passenger seat of the silver Buick. After the drug sale was completed, the vehicle returned to the Defendant's apartment. The evidence plainly established that the Defendant, knowing that Ward intended to sell illegal drugs to CI Goetz, knowingly furnished Ward with substantial assistance in doing so. Accordingly, we conclude that the jury's verdict was supported by sufficient evidence.

*IV.*

The Defendant was found guilty in Count 10 of the delivery of 0.5 grams or more of cocaine, a Class B felony. See Tenn. Code Ann. § 39-17-417(a)(2), (c)(1).

CI Goetz testified that she called the Defendant's cell phone twice on October 31, 2008, once speaking with the Defendant and once with Ward. In the latter phone conversation, CI Goetz and Ward arranged to meet at a Krystal restaurant to buy and sell $80 worth of crack cocaine. A short time later, the Defendant and Ward arrived at the restaurant in the Defendant's vehicle with Ward driving and the Defendant in the front passenger seat. CI Goetz approached the passenger's side of the vehicle, but the Defendant motioned for her

to approach the driver's side. CI Goetz testified that, as she stood beside the driver's side door, she saw the Defendant hand Ward a rock-like substance wrapped in white paper. Ward then handed it to CI Goetz. CI Goetz testified that she then handed Ward $80, and Ward handed the money to the Defendant. Agent Webster saw the transaction take place as described by CI Goetz. Additionally, the transaction was videotaped and played for the jury. The substance in the white paper tested positive for cocaine and weighed 0.5 grams.

The Defendant, who maintains that she was not present at the scene of the crime, asserts that she is not visible on the video recording. However, both CI Goetz and Agent Webster identified her as being in the front passenger seat of the car from whence the drugs originated. CI Goetz stated that she watched the Defendant hand the drugs to Ward, who handed them to CI Goetz. This evidence is sufficient for a jury to conclude that the Defendant delivered 0.5 grams or more of cocaine. Accordingly, we affirm the jury's verdict.

*V.*

The Defendant was convicted in Counts 11 and 12, respectively, of the sale and delivery of 0.5 grams or more of cocaine. The trial court merged the convictions.

Taken in the light most favorable to the State, the evidence establishes that CI Goetz spoke with the Defendant twice over the telephone about purchasing $140 worth of crack cocaine. The second phone conversation was recorded and played for the jury although the audio was distorted. In this latter conversation, CI Goetz and the Defendant arranged to meet at a local gas station. A short time later, the Defendant arrived at the gas station. She was in the passenger seat of the vehicle and Ward was driving. CI Goetz got into the rear seat of the vehicle. She testified that as the Defendant was handing her a clear plastic bag with drugs inside, Ward "grabbed the bag of dope" out of the Defendant's hand and told CI Goetz, "If it wasn't for me, you wouldn't be getting no dope." Ward then "took a piece of [the] dope out" and handed CI Goetz the bag. CI Goetz then handed $140 to the Defendant. The contents of the plastic bag tested positive for cocaine base and weighed 0.8 grams.

The Defendant first argues that she was not present at the scene of the transaction. She points out that Agent Webster did not identify her and that she was not visible on the video recording. However, CI Goetz identified the Defendant as the person sitting in the driver's seat of the vehicle, and this identification was sufficient to establish the Defendant's presence at the scene.

The Defendant next argues that Ward's statements after grabbing the drugs from the Defendant indicate that she was the person responsible for selling the drugs. We are not

persuaded. First, we note that the Defendant's arguments are inconsistent — either she was inside the vehicle at the time of the offense or she was not. Second, the fact that Ward momentarily seized the drugs from the Defendant and took some for herself is irrelevant because the evidence shows that it was the Defendant who produced the illegal drugs and received money in their exchange. Lastly, CI Goetz testified that she understood Ward's statement to mean that Ward had introduced CI Goetz to the Defendant. CI Goetz thus provided a plausible explanation to the jury, and to the extent the jury credited CI Goetz's testimony over the Defendant's we will not disturb its verdict. Thus, we conclude that the evidence was sufficient to support the jury's verdict.

*VI.*

The Defendant was convicted in Counts 13 and 14, respectively, of the sale and delivery of 0.5 grams or more of cocaine. The trial court merged the convictions.

The evidence established that CI Goetz twice called the Defendant to arrange to purchase crack cocaine. The latter phone call was recorded and played for the jury. In this phone call, the Defendant agreed to meet CI Goetz at a local liquor store to sell her $180 worth of crack cocaine. Agent Webster and CI Goetz arrived simultaneously with the Defendant. CI Goetz exited Agent Webster's vehicle and entered the backseat of the Defendant's vehicle. According to CI Goetz, the Defendant asked her to go into the store and buy beer, which she did. When CI Goetz returned, the Defendant told her that there was a cigarette box in the backseat of the car. CI Goetz testified that the box contained "the dope." CI Goetz handed the Defendant $180 and left. The contents of the cigarette box tested positive for cocaine base and weighed 1.4 grams. The Defendant denied being at the liquor store at the time of the transaction; however, both Agent Webster and CI Goetz visually identified her. The jury's verdict clearly accredited the testimony of Agent Webster and CI Goetz over the Defendant, and we will not disturb that verdict on appeal. Taken in the light most favorable to the State, we conclude that this evidence was sufficient to support the jury's verdict.

*VII.*

The Defendant was convicted in Count 16 of the delivery of less than 0.5 grams of cocaine. In this case, CI Johnson spoke over the telephone with the Defendant about purchasing $100 worth of crack cocaine at the Defendant's residence. This phone call was recorded and played for the jury. CI Johnson was given $100 in "buy money" with recorded serial numbers. She then drove to the Defendant's home, knocked on the door, and entered. CI Johnson testified that the Defendant handed her a piece of paper with crack cocaine in it and that she handed the Defendant $100. CI Johnson then left. Her entrance and exit from

the Defendant's house was under constant visual surveillance by DTF agents. The substance in the paper tested positive for cocaine base and weighed 0.3 grams.

Soon after, Assistant Director Miller watched Perkins arrive at the Defendant's residence in a silver Buick and watched the Defendant and another man get into the vehicle and leave. DTF agents stopped the car based upon a felony warrant they had acquired for the Defendant. They recovered from the Defendant's person money bearing the same serial numbers as the buy money used that day by CI Johnson. DTF agents also recovered from the Defendant's person a cell phone that had been used in each of the prior controlled buy transactions. The Defendant denied being at her home at the time that the transaction occurred and denied selling CI Johnson illegal drugs. Thus, the jury's verdict accredits the testimony of CI Johnson and the DTF agents and discredits the Defendant's testimony. Therefore, we will not disturb that verdict. Accordingly, we conclude that this evidence was sufficient to support the jury's verdict.

## *VIII.*

The Defendant was convicted in Count 18 of the delivery of less than 0.5 grams of cocaine. The evidence established that CI Johnson called the Defendant and spoke with her about purchasing $100 worth of crack cocaine later that day. After a series of phone calls and failed attempts to rendezvous, the Defendant and CI Goetz arranged via cell phone to meet at the Defendant's home. This phone call was recorded and played for the jury. DTF agents set up a surveillance position and watched as CI Johnson entered the Defendant's home. CI Johnson testified that the Defendant handed her crack cocaine wrapped in a folded piece of paper and that she handed the Defendant $100. An audio recording of this transaction was made and played for the jury. The substance tested positive for cocaine base and weighed 0.4 grams. The Defendant denied speaking to CI Johnson or selling her crack cocaine. From the jury's verdict, we discern that it accredited the testimony of CI Johnson over that of the Defendant. Therefore, we conclude that the evidence was sufficient to support the jury's verdict.

## *Summary*

After a careful review of the record, we conclude that sufficient evidence was presented to support each conviction. Accordingly, the Defendant is entitled to no relief on this issue.

c. Sentencing

Lastly, the Defendant contends that the trial court erred in ordering her present thirty-year sentence to run consecutively to her prior sixteen-year sentence. She argues that these combined sentences are excessive.

The applicable standard of review when a defendant challenges her sentence is *de novo* on the record with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court did not do so, then the presumption fails, and this Court's review is *de novo* with no presumption of correctness. State v. Pierce, 138 S.W.3d 820, 827 (Tenn. 2004). However, if the trial court considered the statutory criteria, imposed a lawful but not excessive sentence, stated its reasons for the sentence on the record, and its findings are supported by the record, then this Court is bound by the trial court's decision. State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). On appeal, the party challenging the sentence has the burden of demonstrating that it is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Carter, 254 S.W.3d at 344.

Based upon the Defendant's seven prior Class B felonies, the trial court found her to be a career offender under Tennessee Code Annotated section 40-35-108. That statute provides that a "career offender shall receive the maximum sentence within the applicable Range III." Tenn. Code Ann. § 40-35-108(c) (2006). Thus, the trial court imposed the mandatory sentence of fifteen years on each Class C conviction and thirty years on each Class B conviction. The Defendant's seven Class B felonies are one more than required to find her to be a career offender. See Tenn. Code Ann. § 40-35-108(a)(1). On appeal, we discern no argument from the Defendant that she is not properly considered a career offender.

Instead, the Defendant's primary argument is that the trial court should not have ordered her present sentence to run consecutively to her prior sentence. Tennessee Code Annotated section 40-35-115 provides that a trial court may impose consecutive sentences if it finds by a preponderance of the evidence that one of the following criteria are met: "(2) [t]he defendant is an offender whose record of criminal activity is extensive; [or] (6) [t]he defendant is sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(2), (6) (2006). In all cases, a sentence "must be justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." Tenn. Code Ann. §§ 40-35-102(1) (Supp. 2008), -103(2) (2006).

We have reviewed the record and conclude that the trial court properly sentenced the Defendant. The court correctly found that the Defendant is a career offender pursuant to

Tennessee Code Annotated section 40-35-108(a)(1). The court then carefully analyzed whether consecutive sentencing was appropriate. The court noted that the Defendant met two of the criteria for consecutive sentencing. The court found particularly troublesome the fact that the Defendant previously had been convicted for selling illegal drugs, received a relatively light punishment, and soon was arrested for the same behavior while on probation.

The Defendant argues that it was improper for the trial court to consider her prior criminal record both in finding her to be a career offender and also in ordering consecutive sentencing. In this regard we note that the procedure complained of is mandated by the relevant sentencing statutes. See Tenn. Code Ann. §§ 40-35-108(a)(1); 40-35-115(b)(2). This Court repeatedly has affirmed the principle that a trial court may look to a defendant's previous felony convictions both to determine the length of a sentence and to impose consecutive sentencing. See State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993); State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991); see also State v. Willie Price, No. W2009-00083-CCA-R3-CD, 2010 WL 376625, at *14 (Tenn. Crim. App. Feb. 3, 2010), perm. app. denied, (Tenn. June 17, 2010). We discern no fault with the trial court's ordering consecutive sentencing.

Based upon our review of the record, the trial court properly considered the sentencing principles and all relevant facts and circumstances. We conclude that the trial court correctly concluded that the sentence delivered was justly deserved in relation to the seriousness of the offenses and no greater than deserved under the circumstances. Accordingly, the Defendant is entitled to no relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JEFFREY S. BIVINS, JUDGE